**Phillip C. SMITH, Appellant–Respondent,**

v.

**Lori Lynn SMITH, Appellee–Petitioner.**

No. 42A05–9608–CV–327.

Court of Appeals of Indiana.

Feb. 18, 1997.

---

Richard C. Rusk, Rusk Overton & Sobecki, Washington, for appellant-respondent.

Jerry J. McGaughey, Vincennes, for appellee-petitioner.

## OPINION

SHARPNACK, Chief Judge.

Phillip C. Smith appeals the marital property division in favor of his former wife, Lori Lynn Smith. Phillip raises two issues for our review which we restate as:

(1) whether the trial court properly found that the lump sum settlement payments from a personal injury action constituted marital property; and

(2) whether the trial court properly found that Lori did not have to pay child support.

We affirm and remand with instructions.

The record establishes that the parties married on February 5, 1982. They had two children, who were ages thirteen and fifteen at the time of the dissolution proceedings. On September 17, 1984, Phillip was injured while working for Cooper/T. Smith Stevedoring Co. (the "employer"). As a result of this injury, Phillip and Lori sued the employer for damages and eventually obtained a settlement. Under the settlement agreement, the employer was required to make the following payments: (1) an immediate payment of $31,000 to Phillip, (2) an immediate payment of $10,000 to Lori, (3) a monthly $1,000 payment to Phillip for his lifetime with a guarantee of twenty years, (4) a lump sum of $12,500 to Phillip "or his named beneficiary" on May 15, 1996, (5) a lump sum of $50,000 to Phillip "or his named beneficiary" on May 15, 2001, (6) a lump sum of $125,000 to Phillip "or his named beneficiary" on May 15, 2006, and (7) $65,000 to the Smiths' attorney. The injury sustained by Phillip does not prevent him from working as a truck driver or operating a tree trimming service.

On January 13, 1995, Lori filed a petition for dissolution of marriage. On February 1, 1995, Phillip filed a cross-petition for dissolution of marriage. On February 24, 1995, the trial court issued a provisional order requiring in part that the parties retain joint custody of the children with physical custody awarded to Phillip and that Lori pay $50.00 per week in child support until further order by the court.

On August 18, 1995, the trial court held a hearing on the dissolution petitions. Initially, the trial court noted the Smiths' partial agreement as to the distribution of certain property, the custody of the children, the temporary possession of the marital home, the tax deduction, and visitation rights. The trial court noted that the remaining issues in dispute were the child support award, health care expenses, distribution of the real estate and the marital debt, and whether the personal injury settlement constituted marital property. After the hearing, the trial court took the matter under advisement. On July 10, 1996, the trial court issued its order regarding the disputed issues, which provided:

"In dispute in this action is a personal injury settlement entered into on September 17, 1984....

The Court generally cannot conclude future income to be considered as marital property if it is contingent or speculative, however in this case other than monthly payments which are assigned to Phillip for lost income a total amount of settlement is a fixed amount even though payable in installments in the future and, therefore the Court must consider it as earned or fixed income and, therefore a marital prop-

erty asset. The Court finds that the three stipulated lump sum payments must be divided as marital assets on a 50–50 basis between Phillip Smith and Lori Lynn Smith, therefore she is entitled to one-half of the lump sum payment paid May 15, 1996, as well as one-half of the lump sum payment payable May 15, 2001, as well as one-half the lump sum payment payable May 15, 2006. The Court concludes that Lori Lynn Smith is not entitled to one-half of any monthly payment being made to Phillip Smith for projected loss of income.

\* \* \*

The Court finds that as of the date of the hearing Lori Lynn Smith was in arrears in child support to the amount of One Thousand Two Hundred Fifty Dollars ($1,250.00), any existing arrearage of child support as of the date of this ruling should be payable out of her portion of the May 15, 1996, lump sum payment...."

Record, pp. 90–91. Phillip now appeals this order.

## I.

The first issue for our review is whether the trial court properly found that the three lump sum payments constituted marital property subject to division during the dissolution proceedings. In reviewing a trial court's division of marital property, we consider only the evidence most favorable to the judgment. *Berger v. Berger*, 648 N.E.2d 378, 381 (Ind.Ct.App.1995). We presume that the trial court correctly divided the property and will reverse only where the result reached is clearly against the logic and circumstances before the court. *Id.; see Sedwick v. Sedwick*, 446 N.E.2d 8, 10 (Ind. Ct.App.1983). The party challenging the trial court's division of marital assets is charged with overcoming the presumption that the court considered all of the evidence and properly applied the statute. *Hughes v. Hughes*, 601 N.E.2d 381, 384 (Ind.Ct.App.1992), *trans. denied.*

Pursuant to Ind.Code § 31–1–11.5–11(b), the trial court shall divide the "property of

the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation by the parties, or acquired by their joint efforts, in a just and reasonable manner...." The "one pot" theory of § 11(b) specifically prohibits the exclusion of any asset from the reach of the trial court's power to divide and award. *Huber v. Huber*, 586 N.E.2d 887, 889 (Ind.Ct. App.1992), *trans. denied.* The term "property" is broadly defined as "all the assets of either party or both parties." I.C. § 31–1–11.5–2(d).

Phillip claims that the lump sum payments should be treated as lost future wages for permanent injury to his income producing capacity similar to the way that worker's compensation benefits are treated.[1] Citing *Leisure v. Leisure*, 605 N.E.2d 755 (Ind. 1993), Phillip concludes that the trial court erroneously included the lump sum payments in the marital pot. We disagree.

In *Leisure*, the supreme court considered whether federal worker's compensation benefits constituted marital property. The court found that the purpose of the worker's compensation act is to remove obstacles and to insure a more certain remedy for the injured worker. *Leisure*, 605 N.E.2d at 758. The court also found that worker's compensation benefits are intended to replace the future wages that the employee would earn if the employee were able to continue to work, noting that the "benefits are not compensation for actual work performed, but compensate the employee for decreased working capacity as a result of the work-related injury." *Id.* at 759. Next, the court noted that worker's compensation benefits are contingent on the employee's continued disability. *Id.* As a result, the court concluded that worker's compensation benefits are not a vested property interest subject to division, but rather represent future income. *Id.*

In addition, the court specifically noted that a worker's compensation award is not identical to a personal injury recovery because "[t]he Worker's Compensation Act

---

1. Contrary to the position taken on appeal, during the hearing on the petitions for dissolution,

Phillip vehemently denied that the settlement was similar to worker's compensation benefits.

does not contemplate a recovery for pain and suffering." *Leisure,* 605 N.E.2d at 758. "[I]t is now generally accepted that worker's compensation is awarded in lieu of lost wages and not as damages for pain, suffering, and monetary loss caused by the fault of the employer." *Id.*

Turning to the present case, the settlement agreement released the employer from any remedy which the Smiths may have had as a result of Phillip's injury, including:

"any and all rights, claims, liens, remedies or causes of actions whatever nature ... for damages, costs, expenses, loss of earnings, loss of society, loss of consortium, pecuniary and nonpecuniary damages, pain, suffering or disability, including the aggravation of any prior or pre-existing condition, arising out of or in anyway connected with the aforementioned accidents ... including the aggravation of any prior or pre-existing condition, ... including, without limitation, all claims under the Jones Act (46 U.S.C. § 688) the laws of the State of Louisiana or any other state or nation, the Federal Employer's Liability Act (45 U.S.C. § 851), the tort and compensation laws of the State of Louisiana or any other state or nation ... the Longshore and Harbor Workers Compensation Act (33 U.S.C.A. 901, *et seq.,* as amended), the Admiralty and Maritime Law of the United States or any other nation, or any other laws which may afford them or their heirs a right or cause of action based upon any claim of unseaworthiness of the LST Rig S-24, or any other vessel or vessels which are or might be involved, ... including any claims for punitive damages for any alleged unseaworthiness, or for past or future maintenance and cure or damages, including attorneys fees, for failure to pay maintenance and cure, or under any compensation statute, federal or state, or in tort, civil or maritime or under any contract or policy of insurance, whether at law, equity or in admiralty and whether on account of or in any way connected with the alleged accidents and injuries, as aforementioned, and whether the same to be now known or hereafter discovered."

Record, pp. 147–148. This language demonstrates that the settlement precludes all claims arising under state or federal law, sounding in tort or contract, and representing loss of income, pain and suffering, pecuniary damages, etc. The settlement also limits claims by Phillip, Lori, their heirs, assigns, and personal representatives. Although the settlement does not specify whether the payments represent reimbursement for pain and suffering, lost wages, or future income, it clearly acts as a general release of all claims by either party. During the hearing, neither party identified what the payments represented except for the $10,000 payment made to Lori, which both parties agreed represented payment for Lori's loss of consortium claim. As a result, we cannot determine with certainty what the remaining payments represent. However, this inability to determine the specific breakdown of the payments does not prevent the trial court from dividing the settlement. According to the statute, the trial court must divide the parties' "property," which is defined as an "asset" of either party. We will not undertake to divide the settlement into separate and marital parts with only the latter being subject to division. *See Thomas v. Thomas,* 13 Va.App. 92, 408 S.E.2d 596, 598 (1991). Because the settlement for the personal injury action represents compensation for more than any decreased working capacity, *Leisure* does not preclude us from affirming the trial court's division.

Furthermore, as previously noted, we presume that the trial court complied with the statute. *Sedwick,* 446 N.E.2d at 10. The burden is on Phillip to overcome this presumption. *See Hughes,* 601 N.E.2d at 384. He has failed to do so.

We find that the trial court properly based its determination that the lump sum payments constituted marital property on the fact that they were fixed even though they were payable in future installments. The settlement sets forth clear, ascertainable, fixed lump sum payments to be made on specific dates. These payments are not contingent on any event and are payable even after Phillip's death. The settlement was obtained during the parties' marriage as a result of a complaint filed by both parties.

Given that I.C. § 31–1–11.5–2(d) broadly defines property as "all the assets of either party or both parties," that the terms of the lump sum payments are specific and ascertainable, and that Phillip has not demonstrated otherwise, we find that the trial court properly characterized the lump sum payments as marital property subject to division under the statute.[2]

## II.

■ The final issue for our review is whether the trial court properly found that Lori did not have to pay child support. In its provisional order dated February 24, 1995, the trial court ordered Lori to pay child support in the sum of $50.00 per week until further order by the court. Later, during the hearing on the petitions for dissolution of marriage, the trial court indicated that the child support award remained one of the disputed issues between the parties. However, in its final order, the trial court limited its discussion of child support to the issue of Lori's arrearage dating from February, 1995. The trial court did not make any child support award. Phillip challenges the trial court's failure to set an award.

Child support awards are governed by I.C. § 31–1–11.5–12(a), which provides:

"the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct, after considering all relevant factors including:

(1) The financial resources of the custodial parent;

(2) The standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) The physical or mental condition of the child and the child's educational needs; and

(4) The financial resources and needs of the noncustodial parent."

On review, a child support award will be disturbed only when it is clearly erroneous. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind.1992).

Under the Indiana Child Support Rules, there is a rebuttable presumption that the child support award which would result from the application of the guidelines is the correct amount of child support to be awarded. Ind. Child Support Rule 2. However, if the trial court concludes that the amount of the award required under the guidelines would be unjust, the court must enter a written finding indicating the factual circumstances supporting that conclusion. Child Supp. R. 3. With respect to minimum child support levels, the commentary to the guidelines states as follows:

"The Guideline's schedules for weekly support payments do not provide an amount of support for couples with weekly adjusted income of less than $100.00. Consequently the Guidelines do not establish a minimum support obligation. Instead the facts of each individual case must be examined and support set in such a manner that the obligor is not denied a means of self-support at a subsistence level. It is, however, recommended that a specific amount of support be set. *Even in situations where, the noncustodial parent has no income, courts have routinely established a child support obligation at some minimum level.* An obligor cannot be held in contempt for failure to pay support when there is no means to pay, but the obligation accrues and serves as a reimbursement if the obligor later acquires the ability to meet the obligations."

Child Supp. G. 2, commentary (emphasis added); *see Gielsdorf–Aliah v. Aliah*, 560 N.E.2d 1275, 1277 (Ind.Ct.App.1990).

We agree with Phillip that the trial court erred in not addressing the child support award. Although the trial court acknowledged that the child support award was a disputed issue, it failed to address the reasons for not setting an award. We cannot review the trial court's determination without

---

**2.** We need not consider whether the trial court properly divided the lump sum payments equally between the parties because Phillip has not challenged the equal division on appeal. Similarly,

we need not consider whether the trial court properly excluded the $1,000 monthly payments from the marital pot because neither party challenged the disposition of these payments.

findings to support its decision. *See Cobb v. Cobb*, 588 N.E.2d 571, 574 (Ind.Ct.App.1992). As a result, we must remand this cause to the trial court with instructions to provide a basis for its decision not to award child support.[3]

For the foregoing reasons, the marital property division is affirmed and this cause is remanded with instructions to the trial court to provide a basis for its decision not to award child support.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

RUCKER and FRIEDLANDER, JJ., concur.

---

**3.** Lori claims that the trial court did not err by failing to order her to pay child support. In support of her assertion, Lori relies on the facts that she was not employed, that she received only minimal household goods, and that she had no source of income. Although the trial court may consider these facts as a basis for not ordering child support, it must nevertheless provide written findings so that we may review the determination.